IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON  DIVISION

| | | |
|---|---|---|
| Pierside Boatworks, Inc., | ) | Civil Action No. 2:15-3689-DCN-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Judith A. Owens, Addison W. Closson, III, | ) | |
| M/V Frolic LLC, Sailing Vessel Frolic, and | ) | |
| Mickle LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff seeking storage fees and collection costs

(including legal fees and costs) relating to the storage of a boat, the Sailing Vessel Frolic ("Frolic"),

at Plaintiff's place of businesses.  Plaintiff contends that the Defendants Owens and Closson, along

with certain entities[1], are responsible for payment of these fees and costs pursuant to a contract signed

with the Plaintiff to haul the Frolic out of the water and to provide storage.  Plaintiff's claims are for

enforcement of a maritime lien (First Cause of Action), breach of contract (Second Cause of Action),

for quantum meruit (Third Cause of Action), for unjust enrichment (Fourth Cause of Action), and for

fraudulent conveyance (Fifth Cause of Action).  See Plaintiff's Third Amended Complaint.

On May 4, 2017, Defendant Owens filed a second renewed motion for summary

---



[1]Plaintiff also asserts claims against the Frolic itself, as well as against M/V Frolic, LLC, and
Mickle, LLC, both purported successor owners of the Frolic.

judgment pursuant to Rule 56, Fed.R.Civ.P.[2]  Although Closson is also a Defendant, since he is proceeding pro se, a Roseboro Order[3] was entered by Court on May 5, 2017, advising Closson of the importance of a dispositive motion and of the need for him to file an adequate response.  Closson was specifically advised that if he failed to respond adequately, Owens' motion (which only seeks the dismissal of Owens as a party Defendant) may be granted.

Closson did not thereafter file a response; however, Plaintiff filed a response in opposition to Owens' motion on May 18, 2017, following which Owens filed a reply memorandum on May 25, 2017.  The Defendant Owens' motion for summary judgment (as to her) is now before the Court for disposition.[4]

**(Background and Evidence)[5]**

Closson and Owens are husband and wife, having been married in 2007.  In November 2010, they purchased the Frolic with both marital funds and joint insurance proceeds from the sinking of their previous boat.  Owens Deposition, pp. 24-25; Closson Deposition, p. 32.  The Frolic was moored in Charleston, and the plan was to fix her up and put the Frolic into service as a commercial

---

[2]Owens, the only Defendant who has moved for summary judgment, had filed previous motions for summary judgment which were mooted due to the filing of a Third Amended Complaint and other ongoing discovery matters.

[3]See Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

[4]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e)(g), D.S.C.  Defendant Owens has filed a motion for summary judgment.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[5]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment.  Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).



passenger vessel in Rhode Island. <u>Closson Deposition</u>, p. 10. Owens testified that she and Closson traveled to South Carolina to see the Frolic prior to purchasing the vessel. <u>Owens Deposition</u>, pp. 39-40; <u>see also</u> <u>Closson Deposition</u>, p. 33. The Frolic was thereafter registered with the United States Coast Guard in November 2010 in both parties' names as owners, with Closson listed as the "managing" Owner. <u>Owens Deposition</u>, p. 55; Court Docket No. 208-2, pp. 3-12.[6]

In November 2010, Closson signed a charter agreement between the Frolic and Aquidneck Ferry & Charter, Inc. ("Aquidneck"), a company created by Closson.[7] <u>Closson Deposition</u>, Exhibit 5. Aquidneck ran a ferry service in Rhode Island. <u>Closson Deposition</u>, pp. 13-14. Closson signed the agreement as the Owner of the Frolic and as the President of Aquidneck. <u>See</u> Court Docket No. 208-32, p. 2. The charter agreement stated that while Aquidneck was chartering the Frolic from its owners, the Frolic Owners remained liable and responsible for vessel storage, insurance, the crew, and other items. <u>See</u> Court Docket No. 208-32.

In August 2011, Captain O. Bryan Harris was hired by Closson for a "hurricane haul", removing the Frolic, which was still in South Carolina, from the water to protect it from a hurricane.

---

[6]Although Owens claimed at her deposition that she "did not realize [she] was [an] owner", the record evidence clearly shows that Owens signed the purchasing and titling documents, and that the boat was jointly titled. <u>Owens Deposition</u>, p. 104; Court Docket No. 208-2, pp. 3-12. Moreover, Owens also testified at her deposition that the reason she went with Closson to see the boat before they purchased it was because she was "not about to give $20,000 unless I actually see what I'm buying". <u>Owens Deposition</u>, p. 39.

[7]Both Owens and Closson testified that Owens did not personally contribute any funds to Aquidneck or have any ownership in Aquidneck. <u>Owens Deposition</u>, pp. 23-24, 37-38, 112; <u>Closson Deposition</u>, p. 14. However, although Owens also testified that she did not receive any income from Aquidneck and that she never paid any of its liabilities; <u>Owens Deposition</u>, p. 112; <u>see also</u> <u>Closson Deposition</u>, p. 14; Owens acknowledged that she claimed a loss from Aquidneck on her joint tax returns. <u>Owens Deposition</u>, p. 113.



See Court Docket No. 208-34 (Harris Affidavit). The Hurricane Haul Agreement with the Plaintiff was executed by Harris as agent for the owners. The Frolic was then navigated to Pierside by Harris, and the parties do not dispute that the Frolic has been and continues to be located at Pierside since August 2011. See Court Docket No. 108-3, pp. 31-34; No. 198-1, p. 2. In October 2011, Closson apparently signed a work order for Pierside to perform some repairs and maintenance work on the Frolic. See Court Docket No. 208-3. For her part, Owens testified that she has never been to Pierside Boatworks and does not believe that she ever signed any documents at Pierside.[8] Owens Deposition, p. 68. However, John Brophy, the Plaintiff's President, testified that Owens did come to Pierside, his boatyard, in early 2012. Brophy Deposition, pp. 11, 25, 28-30.

Closson emailed Brophy in October 2011 that he wanted the Frolic placed in the water, following which he planned to take the Frolic to the Ashley Marina in Charleston and then to Rhode Island to be placed in commercial service. See Court Docket No. 208-3, pp. 2-3. Closson also sent an email to a local attorney regarding plans to commercially operate the Frolic in Rhode Island. See Court Docket No. 208-3, pp. 3-5. Plaintiff contends that also around this time, Closson created flyers advertising the Frolic for charter under the name Frolic Yacht Charters with a specific website and contact information, although Aquidneck is not mentioned as the charter company on the flyers. See Court Docket No. 208-49. While Owens asserts that she knew nothing of these plans, the evidence submitted shows that she was copied on various of these emails both with the Plaintiff and the lawyer concerning Pierside's work and the plans for the boat. See Court Docket No. 208-3, pp. 3, 5, 7-8.

On February 9, 2012, Closson signed a storage agreement with the Plaintiff. Closson

---

[8]Neither party has submitted any documents into the evidence showing that Owens ever signed any documents at Pierside.



Deposition, p. 47 & Exhibit 27; Brophy Deposition, Exhibit 4.  Closson wanted to do some work on the Frolic himself at that time, and Brophy testified this agreement has to be signed before someone can come onto the premises to themselves do work on a boat stored there (i.e. "Do it yourself" storage).  Brophy Deposition, pp. 23-26.  At that point, the Frolic had already been stored at Plaintiff's facility for approximately six (6) months with no payments for the boat's storage ever having been made.  Brophy Deposition, pp. 24-26.  Brophy testified that based upon Closson's representation of himself as the Owner and based on the 2011 Hurricane Haul Agreement signed by Captain Harris, Brophy believed Closson to be the owner and that all bills had been submitted to Closson's email with invoices addressed to Addison Closson.  Brophy Deposition, pp 28, 31, 63-65; Exhibits 4-6 (Attached to Defendant Owens' Motion for Summary Judgment).

When Closson visited the facility over the course of a few days when executing this agreement, Brophy testified that Owens was also present on at least one occasion, although Brophy did not speak to her.  Brophy Deposition, pp. 24-25, 28-30.[9]  Further, when Closson did make a payment to the Plaintiff on February 10, 2012 for the repair work that had been done on the boat, he used the debit card from Closson and Owens' joint bank account.  See Exhibit 1 (Attached to Defendant Owens' Reply Memorandum); see also Court Docket No. 208-40, p. 3.  That payment did not include any amount for Plaintiff's continued storage of the Frolic.  Brophy Deposition, p. 24.  However, in June 2012, Closson emailed Plaintiff stating that he and Owens had received their

---

[9]Owens claims that she never visited Pierside, and submitted a credit card statement reflecting charges in the Washington, D.C. area, including the Children's Hospital where she worked, during that time period.  See Defendant Owens' Reply Memorandum, p. 3; see also Court Docket No. 208-40.  However, for purposes of Plaintiff's motion, Brophy's testimony is assumed to be true.  Pittman, 87 F.3d at 118.



income tax refund check and would be able to make a payment on a settlement offer for the storage fees with this refund. See Court Docket No. 208-42. This offer was not for the full amount owed, and Brophy responded by demanding that the outstanding balance be paid immediately or he would "hand the account over to an attorney". It is uncontested that thereafter no payment was ever made. On May 14, 2015, Closson sent Plaintiff another email regarding the outstanding balance, with Owens copied on the email. The email stated that Closson and Owens had discussed the debt owed and that they were willing to transfer title of the boat to a "qualified new owner who has the ability to restore her to her original condition", but did not offer to pay the outstanding bill owed for storage of the boat. It was signed "Addison Closson and Judith Owens." See Court Docket No. 208-43. On May 21, 2015 another email was sent to the Plaintiff stating that although Closson and Owens wanted to resolve the debt issue, they were also prepared to litigate the matter, which would be "quite time consuming and expensive". The email was again signed as being from both Closson and Owens, and Owens was copied on the email. See Court Docket No. 208-44.

In June 2015, Plaintiff filed a lawsuit in state Magistrate Court to sell the Frolic. However, Closson and Owens then transferred ownership of the Frolic to a company called Mickle, LLC, on July 2, 2015. Addison Closson was listed on the incorporation documents as the "agent" for Mickle, LLC. See Court Docket No. 44, p. 2, ¶ 2 of the Fact Section; Court Docket No. 44-1, p. 1. Both Owens and Closson signed the Bill of Sale transferring ownership of the boat to Mickle, LLC. See Court Docket No. 208-4; see Court Docket No. 44, p. 2, ¶ 3 of the Fact Section; Court Docket No. 44-1, p. 4. Plaintiff contends that Closson and Owens also filed a Schedule C on their



6

2016 tax return for this company.[10]  On July 31, 2015, Closson and Owens hired an attorney to file a special Motion to Dismiss the Magistrate Court's action.  <u>See</u> Court Docket No. 208-48.  Plaintiff thereafter voluntarily dismissed that action, and noticed Defendants' counsel that a case would be filed in federal court.  This case was then filed on September 15, 2015.

In November 2015, the M/V Frolic, LLC was formed.  Closson and Owens are listed as the managing members of this company on the incorporation document.  <u>See</u> Court Docket No. 208-9.[11]  Thereafter, on December 8, 2015, ownership of the Frolic was transferred to M/V Frolic, LLC.  <u>See</u> Court Docket No. 208-12.  Again, both Closson and Owens signed the Bill of Sale.  <u>See</u> Court Docket No. 208-13.  On December 10, 2015, Closson and Owens filed paperwork with the U.S. Coast Guard requesting that the Frolic's ownership be transferred to M/V Frolic, LLC.  <u>See</u> Court Docket No. 208-14.  That same month, Closson and Owens' counsel filed two Answers and Amended Answers on behalf of Closson and Owens, asserting ownership of the Frolic by M/V Frolic, LLC.  <u>See</u> Court Docket Nos. 208-16 & 208-17.

On April 1, 2016, Owens and Closson sent a letter to the Coast Guard asking the Coast Guard to disregard the application of Mickle, LLC to list the Frolic as its property, and to instead list it as the property of M/V Frolic, LLC.  <u>See</u> Court Docket No. 208-18, p. 1.  On April 12, 2016, Closson sent the vessel documentation service an email asking that they place the transfer to M/V

_____

[10]Although Plaintiff makes this assertion, this document has not been submitted as an exhibit. The most recent year of tax returns attached to Plaintiff's memorandum in opposition to summary judgment appears to be 2015.  <u>See</u> Court Docket No. 208-41.

[11]This document was prepared by Harvard Business Services, Inc., which handled the incorporation. <u>Bell Deposition</u>, pp. 17-18.  However, when this document was produced to Plaintiff in discovery, it had been altered to show only Closson as the managing member of the corporation. <u>Bell Deposition</u>, pp. 18-21; <u>see</u> Court Docket Nos. 208-9 & 208-11.



Frolic, LLC on hold until some issues can be sorted out. See Court Docket No. 208-19, p. 1. In May 2016, Closson and Owens stated in federal court documents that a "clerical error" occurred when the sale to M/V Frolic, LLC listed Owens and Closson as the Frolic's owners and their counsel was wrong when he filed the Answers and Amended Answers. See Court Docket No. 44, p. 3, ¶ 11.

**(Discussion)**

Summary judgment shall be rendered forthwith if the pleadings, depositions, documentary evidence, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P.[12] The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendant Owens' motion should be granted, in part,

---

[12]Plaintiff contends, in part, that certain emails and testimony regarding the parties' potentially settling this matter constitutes evidence that Owens was responsible for the debt at issue. Owens herself testified that they had some discussions with Brophy to try to reach a settlement, but that they were never able to do so. Owens Deposition, p. 53. The evidence also reflects that Owens was copied on certain correspondence regarding potential settlement of the matter at approximately the same time as the filing of the State Magistrate Court action. See Court Docket Nos. 208-43 & 208-44. However, with regard to any settlement negotiations surrounding these lawsuits, the undersigned agrees with Owens that compromise offers are not admissible to prove validity of a disputed claim. See Rule 408, Fed.R.Evid. Likewise, conduct or statements in the course of compromise negotiations are similarly not admissible. Fed.R.Evid. 408(a)(2). Therefore, any evidence relating to settlement negotiations does not establish Owens' liability for the debt for purposes of Plaintiff's motion.



and denied, in part, as is set forth below.

## I.

### (Maritime Lien)

Plaintiff's First Cause of Action is for a maritime lien to be placed on the Frolic, which remains at the Plaintiff's shipyard. A maritime lien is "a special property right in the vessel, arising in favor of the creditor by operation of law as security for a debt or claim." State Bank & Tr. Co. v. LIL AL M/V, No. 16-5053, 2017 WL 3265870, at *2 (E.D. La. Aug. 1, 2017). Plaintiff asserts that it is entitled to enforce a maritime lien in order to have the Frolic "arrested" and sold.

Owens has not moved for summary judgment on Plaintiff's first cause of action, nor has she moved on behalf of any other Defendant. Rather, she has only moved for summary judgment on the remaining causes of action as to her individually. Therefore, Plaintiff's First Cause of Action is not at issue in this motion.

## II.

### (Breach of Contract)

Plaintiff alleges in its Second Cause of Action that Closson, as the "managing" owner of the Frolic and therefore with full implied authority, signed a contract with the Plaintiff, individually and on behalf of the "partnership" created by virtue of Closson's and Owens' joint ownership of the vessel, to provide storage for the Frolic. See Court Docket No. 178, ¶¶ 12-15, 28. Plaintiff further alleges that the Defendants have not made payment for storage of their boat, are therefore in breach of this contract, and that it is entitled to damages.

Admiralty law generally applies to all maritime contracts. A contract is maritime if it relates "to a ship in its use as such, or to commerce or to navigation on navigable waters, or to



transportation by sea or to maritime employment. <u>MP Leasing Corp. v. Colonna's Shipyard</u>, No. 07–273, 2009 WL 2581575 (E.D.Va. May 8, 2009). Contracts to store a ship may fall within admiralty jurisdiction, and no party appears to contest the applicability of admiralty law to this claim. <u>See</u> <u>also</u> <u>Am. E. Dev. Corp. v. Everglades Marina, Inc.</u>, 608 F.2d 123, 125 (5th Cir. 1979)["We conclude, therefore, that the boats were not withdrawn from navigation and that the contracts for their dry storage were within admiralty jurisdiction."]; <u>McCutcheon v. Charleston Boatworks, Inc.</u>, No. 07-4079, 2010 WL 2431017, at *4 (D.S.C. June 14, 2010)["Generally, admiralty law applies to all maritime contracts."]. "In an admiralty case, a court applies federal common law and can look to state law in situations where there is no admiralty [law] on point." <u>McCutcheon</u>, 2010 WL 2431017, at *4 (citing <u>Ost–West–Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.</u>, 160 F.3d 170, 174 (4th Cir.1998)).

"In order to sustain a case for breach of contract, a plaintiff must prove: (1) the terms of the maritime contract; (2) that the contract was breached; and (3) the reasonable value of purported damages". <u>MP Leasing Corp.</u>, 2009 WL 2581575, at *3 (E.D. Va. May 8, 2009)(citing <u>Sweet Pea Marine, Ltd. v. APJ Marine, Inc.</u>, 411 F.3d 1242, 1249 (11th Cir.2005)[setting forth elements for an oral ship repair contract]). For purposes of Owens' motion, she does not appear to dispute that there was a contract, that the contract was breached in that the storage fees have not been paid, and that Plaintiff has suffered damages.[13] Rather, Owens argues that she is not a party to any contract, and that she is therefore not liable for any damages owed under any such contract. However, Plaintiff asserts

---

[13]Although is is undisputed that the Frolic has remained at Plaintiff's facility since August 25, 2011, and that no storage fees have been paid, it is not necessary at this point to determine the amount or reasonableness of the damages claimed, as Owens has not contested their reasonableness at this point or moved for summary judgment on that issue.



that Owens is liable for breach of contract under its Second Cause of Action on any one of three alternative grounds: 1) she was Closson's partner; 2) Closson had implied authority to act on Owens' behalf; and/or 3) Owens ratified Closson's actions. See Plaintiff's Memorandum in Opposition to Summary Judgment, pp. 15-26. Each of these arguments are addressed hereinbelow in turn.

### (Partnership)

Plaintiff argues that Owens is liable because she and Closson were joint owners and therefore "partners" in the ownership of the vessel. Under South Carolina law, a partnership is an association of two or more persons to carry on as co-owners a business for profit. S.C. Code Ann. § 33-41-210. Partners are jointly and severally liable for everything chargeable to the partnership. S.C. Code Ann. § 33-41-370. Further, while it is undisputed that there is no written partnership agreement in this case, a written document is not required to form a legal partnership. Loft v. Lapidus, 936 F.3d 663, 636 (1st Cir. 1991)(citation omitted). Rather, a partnership agreement may rest in parol evidence, and may even be implied or without express intention. Wyman v. Davis, 223 S.C. 172, 174 (1953).

Parties are considered partners where their acts, conduct, or agreement show that they intended to combine their property, labor, skill and experience, or some of these elements on one side, and some on the other, to carry on as principals or co-owners, a common business, trade, or venture as a commercial enterprise, and to share, either expressly or by implication, the profits and losses or expenses that may be incurred. Moore v. Moore, 599 S.E.2d 467, 477 (S.C.Ct.App. 2004). However, the mere joint ownership of a boat is not sufficient to establish a partnership. See S.C. Code Ann. § 33-41-220 (2) ["Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property or part ownership does not of itself establish a partnership, whether such co-owners



11

do or do not share any profit made by the use of the property . . ."].  It is necessary that the parties, by their acts, conduct or agreement, show they intend to carry on a common business, trade, or venture as a commercial enterprise, and to share, either expressly or by implication, the profits and losses or expenses that may be incurred, to be "partners".  Ackerman v. Walker, No. 09-622, 2009 WL 9530539 (S.C.Ct.App. Dec. 30, 2009); Halbersberg v. Berry, 394 S.E.2d 7, 10 (S.C.Ct.App. 1990).

The following tests can be applied to determine whether a partnership exists: (1) the sharing of profits and losses; (2) community of interest in capital or property; and (3) community interest in control or management.  Halbersberg, 394 S.E.2d at 10.  In this case, there is not sufficient evidence in the record to establish a genuine question of fact that Owens and Closson had or formed a "partnership" with regard to the Frolic.  There is certainly evidence of a community interest in the property, as Closson and Owens were jointly the owners of the property, and Owens (as well as Closson) had provided the capital for its purchase.  However, only  Closson signed the charter agreement with Aquidneck to put the boat into commercial service.  There is no evidence of any profit or loss for Aquidneck's operation of the Frolic in the record, nor is there any evidence that Owens had any interest in Aquidneck.  While Plaintiff argues that Owens was able to benefit from an unrelated loss on her joint tax returns from Aquidneck since her spouse declared the loss on their joint tax return, that evidence alone does not establish her as either a partner in Aquidneck or in a commercial venture involving her (jointly owned) property and Aquidneck.  Cf. Zeeman v. United States, 395 F.2d 861, 864 (2nd Cir. 1968) [The filing of a joint tax return does not serve to merge a married couple into a single economic unit]; In re Wetteroff, 453 F.2d 544, 547 (8th Cir. 1972) [The filing of a joint tax return does not change the ownership or property rights between taxpayers];



12

<u>Calvin v. United States</u>, 354 F.2d 202, 204 (10th Cir. 1965). The evidence that Closson created flyers advertising the Frolic for charter under the name Frolic Yacht Charters with a specific website and contact information also does not establish any "partnership" between Closson and Owens, as there is no evidence connecting Owens to these flyers or website, nor is there any evidence that this enterprise had any profit or loss that benefitted Owens. <u>See</u> Court Docket No. 208-49. There is also no evidence that Owens was involved in this commercial scheme, or in any efforts to place the Frolic into commercial service.

Accordingly, the evidence does not create a genuine issue of fact as to whether Owens and Closson formed a partnership with respect to their ownership in the Frolic sufficient for Owens to be held liable under this theory for breach of contract for the storage fees owed in this case.

### (Implied Authority)

Plaintiff also contends that even if there was no "partnership", Owens is still liable because she had granted Closson implied authority to act on her behalf. Agency is generally a question fact. <u>R &G Const., Inc. v. Lowcountry Reg'l Transp. Auth.</u>, 540 S.E.2d 113, 118 (S.C.Ct.App. 2000)(citing <u>Gathers v. Harris Teeter Supermarket</u>, 317 S.E.2d 748 (S.C.Ct.App. 1984)). "Agency may be implied or inferred and may be proved circumstantially by the conduct of the purported agent exhibiting a pretense of authority with the knowledge of the alleged principal". <u>R & G Const., Inc.</u>, 540 S.E.2d at 118 (citing <u>Fernander v. Thigpen</u>, 293 S.E.2d 424 (S.C. 1982)). However, the mere fact that Owens and Closson were married during this time period is not by itself



13

enough to show that Closson had implied authority to act as Owens' agent.[14] <u>Johnson v. Arbabi</u>, 584 S.E.2d 113, 116 (S.C. 2003) (citing <u>Hinson v. Roof</u>, 122 S.E. 488 (S.C. 1924) [the marriage relation of the parties is not necessarily enough to establish the fact that the one is the agent of the other; there must be other proof of agency]); 41 C.J.S. Husband & Wife § 56 (1991) ["A spouse may constitute the other spouse as an agent either expressly or impliedly; but, if agency is implied, it must be by conduct, and not merely from a party's position as a spouse."]. Rather, the evidence must be sufficient to infer that the principal (Owens) had by her conduct or actions granted over to the agent (Closson) the authority to take the actions at issue.

A review of the evidence with respect to the contract at issue shows that on August 25, 2011, Captain Harris signed the Hurricane Haul Agreement with the Plaintiff. <u>Brophy Deposition</u>, Exhibit 3. No party disputes that Harris had the authority to sign the Hurricane Haul Agreement on behalf of the owner of the vessel. However, Closson testified that there was never an occasion when Owens contacted Captain Harris, and the Agreement, which was filled in by Harris, lists the owner as Addison Closson. <u>Closson Deposition</u>, p. 118. <u>See also</u> Court Docket No. 208-36. Owens testified that she herself never signed any contract with the Plaintiff,[15] and that she never even saw the boat after it was purchased. <u>Owens Deposition</u>, pp. 104, 116. Owens also testified that she did not have any role in the recruitment or hiring of a captain or crew members for the Frolic, and that she never told anyone to tell other people that she would answer for the debts of the Frolic. <u>Owens</u>

---

[14]The Court also notes that while not legally separated, the evidence shows that Closson and Owens were estranged during part of the relevant time period. <u>Owens Deposition</u>, pp. 10-12.

[15]Neither party has submitted any documents into the evidence showing that Owens signed any documents at Pierside.



Deposition, pp. 115-116.  Closson testified that he did not tell his wife where the Frolic was located, and that in his discussions and dealings with the Plaintiff, that Owens' name never came up.  Closson Deposition, pp. 30, 126.

Brophy also testified that, based upon Closson's representation of himself as the Owner and based on the 2011 Hurricane Haul Agreement signed by Captain Harris, he believed Closson to be the owner and that all bills had been submitted to Closson's email with invoices addressed to Addision Closson.  Brophy Deposition, pp 28, 31, 63-65; Exhibits 4-6 (Attached to Defendant Owens' Motion for Summary Judgment).  Brophy testified that Pierside did not research the ownership of the Frolic, nor is it reasonable to expect that it would have, as the Agreement itself and the hauling out of the boat were all done in a time crunch as there was an approaching hurricane.  Brophy Deposition, p. 20.  However, it is not necessary for Pierside to have known that Owens was an owner of the Frolic at the time the Hurricane Haul Agreement was signed to establish liability for her under an implied authority theory.  See Restatement (Second) of Agency § 7 (1958) ["The fact that the third person with whom the agent deals on account of the principal has no knowledge of the . . . principal's existence, does not prevent the agent from having authority to make the principal a party to the transaction . . ."].  Rather, the question is what the relationship was between Closson and Owens, and whether Closson had implied authority from Owens to take the action he did to protect their joint investment, the Frolic, from an oncoming hurricane.

"The principal is bound by the contract of [her] agent when at the time it was made the agent acted within the limits of his express authority, or the scope of his implied authority".  Carrollton Hospitality, LLC v. Kentucky Insight Partners II, LP, No. 13-21, 2014 WL 2506463, at



* 15 (E.D.Ky. June 3, 2014) (internal quotations omitted). Here, Owens and Closson jointly owned the boat, but the titling document clearly shows that Closson was designated to be the "managing" owner; see Court Docket No. 208-2, pp. 3-12; and Owens confirmed at her deposition that Closson handled everything relating to the boats, including maintenance, repairs and dockage issues. She did not play any role in the handling or managing of either the Frolic or the prior boats she and Closson had owned. Owens Deposition, pp 102-103. Even so, she and Closson shared in the finances of their joint ownerships, as can be inferred by the fact that the evidence shows they shared in the proceeds of the settlement from the sinking of their previous boat. Owens Deposition, pp. 24, 102. As such, a question of fact is presented in this evidence as to whether Closson had implied authority from Owens to enter into a storage contract with Pierside to protect his and Owens' joint property, the Frolic, from an impending hurricane. Esso International, Inc. v. The SS Captain John, 443 F.3d 1144, 1148 (5th Cir. 1971) ["The test [for implied authority] is whether the agent may reasonably draw the inference that the principal intended him so to act"]; Restatement(Second) of Agency § 7(1958) ["authority is created by implication"].

Therefore, while Owens has presented evidence and testimony to dispute that Closson possessed any implied authority to act on her behalf (even continuing in some parts of her deposition to deny she was even an owner of the Frolic or knew that she was an owner, notwithstanding the substantial documentary evidence to the contrary), considering the evidence in the light most favorable to the Plaintiff, she is not entitled to summary judgment on this claim. See Muhammed v. Klotz, 36 F.Supp. 2d 240, 243 (E.D.Pa. 1999) ["[A]t the summary judgment stage the only inquiry is the threshold one of determining whether there is a need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-



16

sided that one party must prevail as a matter of law!"], citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477

U.S. 247, 250-252 (1986).

**(Ratification)**

> The doctrine of ratification . . . states a principal may ratify the authority of a
> purported agent by express or implied adoption and confirmation of an act or contract
> performed or entered into on its behalf by the purported agent. <u>Lincoln v. Aetna Cas.</u>
> <u>& Sur. Co.</u>, 386 S.E.2d 801, 803 (S.C. Ct. App. 1989). "Ratification exists upon the
> occurrence of three elements[:] (1) acceptance by the principal of the benefits of the
> agent's acts, (2) full knowledge of the facts, and (3) circumstances or an affirmative
> election indicating an intention to adopt the unauthorized arrangements." <u>Id</u>.

<u>Rainsford v. Apex Bank</u>, No. 16-03521, 2017 WL 3307647, at *4 (D.S.C. Aug. 3, 2017).

With regard to the first element, the evidence shows that Closson as Owens' agent

(through Harris) took necessary steps to protect their jointly owned vessel by having it hauled out of

the water and placed at Pierside. Considered in the light most favorable to the Plaintiff, this was

certainly a beneficial act for Owens (the boat owner), and although there is no evidence that Closson

consulted with Owens before hand (in fact, Closson specifically testified that he did not), Owens

certainly learned that the Frolic was being stored at Pierside subsequently and took no action to

nullify Closson's actions. Concerning the second element, Brophy testified that at some point in 2012

he became aware that Plaintiff owned part of the Frolic, and she was included in a telephone call with

Closson concerning payment of the storage fees. <u>Brophy Deposition</u>, pp. 39-40, 49. Owens was also

copied on emails which discussed both the storage of the Frolic and other work Pierside was to

perform, showing her knowledge that the Frolic continued to be stored at the Plaintiff's location,

while Owens herself (according to Brophy's testimony) visited the boatyard with her husband after

the Frolic had been sent there for storage. <u>See</u> Court Docket No. 208-3; <u>Brophy Deposition</u>, pp. 24-



17

25, 28-30. Finally, with respect to the third element, Brophy testified that he discussed the storage fees with Owens as early as 2012 and that she never told him that she was not a responsible party for the fees, only objecting to the amount of the fees. Brophy Deposition, pp. 39-40, 49. Owens also (considering the evidence in the light most favorable to the Plaintiff ) acquiesced to the Frolic remaining at Pierside, some of the fees owed Pierside were paid out of Closson's and Owens' joint account, and an offer of payment allegedly from both Defendants was made in 2012 utilizing money from their joint tax return.

Accordingly, there is a question of fact as to whether Owens at some point in time ratified the contract sufficient to avoid summary judgment on this claim. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 [At summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor . . . . Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts," are all functions for the trier of fact].

### III.

### (Quantum Meriut and Unjust Enrichment)[16]

Plaintiff asserts a claim for quantum meriut in its Third Cause of Action. In its Fourth Cause of Action, Plaintiff asserts a claim for unjust enrichment. "The South Carolina Supreme Court has explained that quantum meruit is a remedy for unjust enrichment." Crossroads Convenience, LLC v. First Cas. Ins. Grp., No. 15-02544-, 2017 WL 1135132, at *6 (D.S.C. Mar. 27, 2017)(quoting

---

[16]Because the causes of action of unjust enrichment and quantum meruit require proof of the same elements, the Court has discussed these two causes of action together. See discussion, infra.



18

Barnes v. Johnson, 742 S.E.2d 6, 10 (S.C. Ct. App. 2013)(citing Columbia Wholesale Co. v. Scudder

May N.V., 440 S.E.2d 129, 130 (S.C. 1994)); Rose Elec., Inc. v. Cooler Erectors of Atlanta, Inc., 794

S.E.2d 382, 384 (S.C.Ct. App. 2016), reh'g denied (Dec. 29, 2016)("Quantum meruit is an equitable

doctrine to allow recovery for unjust enrichment.")(citing Columbia Wholesale Co., Inc. v. Scudder

May N.V., 440 S.E.2d 129, 130 (1994). "The elements to recover for unjust enrichment based on

quantum meruit, quasi-contract, or implied by law contract, which are equivalent terms for equitable

relief, are: '(1) a benefit conferred by the plaintiff upon the defendant; (2) realization of that benefit

by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it

inequitable for him to retain it without paying its value.' " Wired Fox Techs., Inc. v. Estep, No.15-

331-BHH, 2017 WL 1135288, at *15 (D.S.C. Mar. 27, 2017)(quoting Regions Bank v. Wingard

Properties, Inc., 715 S.E.2d 348, 356 (S.C. Ct. App. 2011) (quoting Myrtle Beach Hosp., Inc. v. City

of Myrtle Beach, 532 S.E.2d 868, 872 (S.C. 2000)).

        In this case, Owens contends that she did not receive any value from the services

rendered by Pierside, arguing that any services provided by Pierside only benefitted Closson.

However, Owens owned the Frolic at the time that it was removed from the water pursuant to a

Hurricane Haul Agreement in order to protect it from potential damage. The undersigned cannot find

as a matter of law that a benefit was not bestowed upon Owens by this action. See also, discussion,

supra. The undersigned also finds that a question of fact exists as to whether Owens benefitted from

this arrangement, again for reasons already discussed. Finally, with regard to the third element,

Owens was copied on emails showing that the Frolic was being stored by the Plaintiff and that

Plaintiff was even performing repair work, she was involved in a telephone conversation concerning

the boat being stored at Pierside and the balance owed for the storage fees, and she never contacted



the Plaintiff to make any other arrangements or attempted to move the Frolic from the storage facility. As an owner of the Frolic, Owens could certainly be found to be a beneficiary of Pierside's acceptance and continued storage of her vessel such as to make it inequitable for her to retain the value of this service without having to pay anything for the service(s) rendered.

Accordingly, Owens' motion for summary judgment on this claim should be denied.

## IV.

### (Fraudulent Conveyance)

With regard to Plaintiff's fraudulent conveyance claim (Fifth Cause of Action), Owens moves for summary judgment on the ground that an essential element of this claim is that "the grantor was indebted at the time of the transfer", and that she was not indebted to the Plaintiff for the reasons argued as to the other causes of action. See Memorandum in Support of Summary Judgment, p. 20, n. 15; (citing Durham v. Blackard, 438 S.E.2d 259, 262 (S.C.Ct.App. 1993); accord In re Hanckel, 512 B.R. 539, 549 (Bankr.D.S.C. 2007); First Citizens Bank and Trust Co., Inc. v. Park at Durbin Creek, LLC, Opin. No. 5469, 5-6 (S.C.Ct. App. Feb. 15, 2017); Mathis v. Burton, 460 S.E.2d 406, 408 (S.C.Ct.App. 1995). However, since the undersigned has determined that questions of fact remain as to other causes of action, Owens' motion for summary judgment on Plaintiff's fraudulent conveyance claim should also be denied.

### Conclusion

Based on the foregoing, it is recommended that the Defendant Owens' motion for summary judgment be **granted** with respect to her Second Cause of Action for breach of contract solely to the extent Plaintiff's claim is based in partnership. Otherwise, Defendant Owens' motion



should be **denied** for the reasons stated.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

November 17, 2017
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk

United States District Court

Post Office Box 835

Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).