IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
IN ADMIRALTY

| | |
|---|---|
| PIERSIDE BOATWORKS, INC., | ) |
| | ) No. 2:15-cv-03689-DCN |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) **ORDER** |
| JUDITH A. OWENS, ADDISON W. CLOSSON, III, M/V FROLIC LLC AND MICKLE LLC *in personam*, and SAILING VESSEL FROLIC, her engines, bowspirit, anchor, cables, chains, rigging, tackle, apparel, sails, furniture and all accessories hereunto appertaining and belonging to her, *in rem*, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

This matter is before the court on United States Magistrate Judge Marchant Bristow's report and recommendation ("R&R"), ECF No. 254, that the court grant in part and deny in part defendant Judith A. Owens's ("Owens") second renewed motion for summary judgment, ECF No. 205. For the reasons set forth below, the court adopts the R&R, and grants in part and denies in part Owens's second renewed motion for summary judgment. Additionally, the court adopts those portions of the R&R which are not inconsistent with this order.

## I. BACKGROUND

This admiralty case arises out of the alleged breach of contract, default, and foreclosure of a maritime lien against defendant Sailing Vessel Frolic, her engines, bowspirit, anchor, cables, chains, rigging, tackle, apparel, sails, furniture and all accessories hereunto appertaining and belonging to her (the "Frolic"). The R&R ably

1

recites the salient facts of this case, and it is unnecessary to review the details of the complaint, filings, depositions, and exhibits that constitute the factual record. The court notes a few relevant facts.

### A.     Factual Background

Defendants Owens and Addison W. Closson, III ("Closson"), who are husband and wife, used marital funds and joint insurance proceeds from the sinking of their previous vessel to purchase the Frolic in November 2010, and they planned to put her into service as a commercial passenger vessel in Rhode Island. R&R 2–3. Also in November 2010, Closson signed a charter agreement between the Frolic and Aquidneck Ferry & Charter, Inc. ("Aquidneck"), a company Closson created to run a ferry service in Rhode Island. R&R 3. The charter agreement provided that while Aquidneck chartered the Frolic, Closson was responsible for vessel storage, insurance, her crew, and other items. R&R 3.

In August 2011, Closson hired Captain O. Bryan Harris ("Harris") for a hurricane haul, which entailed removing the Frolic from the water in South Carolina to protect her from an impending hurricane. R&R 3. Plaintiff Pierside Boatworks, Inc. ("Pierside") entered into the hurricane haul agreement with Closson and Owens through Harris as their agent. R&R 4. Harris navigated the Frolic to Pierside for storage where she has been located since August 2011. R&R 4. In October 2011, Closson signed a work order for Pierside to perform some repairs and maintenance on the Frolic. R&R 4. On February 9, 2012, Closson signed a storage agreement with Pierside, which was a prerequisite to anyone coming onto Pierside's premises to perform repairs. R&R 4–5. Up to this point, the Frolic had been stored at Pierside's facility for approximately six

months with no payments made. R&R 5. All invoices had been addressed to Closson and sent to his email. R&R 5.

On February 10, 2012, Closson used the debit card from his and Owens's joint bank account to make a payment to Pierside for the repairs it made to the Frolic. R&R 5. In June 2012, Closson emailed Pierside, stating that he and Owens had received their income tax refund check and would be able to make a payment on a settlement offer for the unpaid storage fees on the Frolic but not the full amount owed. R&R 5–6. John Brophy, president of Pierside, ("Brophy") responded by demanding payment for the full outstanding balance. R&R 6. Thereafter, no payment was made. R&R 6. On May 14, 2015, Closson emailed Pierside, with Owens copied, about the outstanding balance, stating that he and Owens had discussed the debt and were willing to transfer the Frolic's title to a qualified new owner, but they did not offer to pay the outstanding storage bill. R&R 6. On May 21, 2015, Closson sent another email with Owens copied, stating that they wanted to resolve their debt with a settlement amount but were prepared to litigate in federal court. R&R 6.

In June 2015, Pierside filed a lawsuit in South Carolina magistrate's court to sell the Frolic; however, on July 2, 2015, both Closson and Owens signed a bill of sale transferring ownership of the Frolic to Mickle, LLC, a company with Closson listed as the registered agent on the its incorporation documents. R&R 6. Subsequently, Pierside voluntarily dismissed the magistrate's court action and filed this case in federal court on September 16, 2015. R&R 7.

In November 2015, the M/V Frolic, LLC ("M/V Frolic") was formed, with Closson and Owens listed as the managing members on its incorporation documents.

R&R 7. On December 8, 2015, Closson and Owens signed a bill of sale transferring ownership of the Frolic to M/V Frolic. R&R 7. Subsequently on December 10, 2015, Closson and Owens filed paperwork with the U.S. Coast Guard, requesting that the Frolic's ownership be transferred to M/V Frolic. R&R 7. Thereafter, Closson and Owens filed answers and amended answers, denying that they owned the Frolic. R&R 7. On April 1, 2016, Closson and Owens sent a letter to the U.S. Coast Guard, requesting it to disregard Mickle, LLC's application to list the Frolic as its property and instead to list it as M/V Frolic's property. R&R 7. On April 12, 2016, Closson sent an email to a vessel documentation service, requesting that it place the ownership transfer to M/V Frolic on hold. R&R 7–8. In May 2016, Closson and Owens stated in a federal court filing that a clerical error occurred when the bill of sale to M/V Frolic listed Closson and Owens as owners of the Frolic and that their counsel erroneously stated in the answers and amended answers that they transferred ownership of the Frolic to M/V Frolic. R&R 8.

### B. Procedural Background

As previously stated, Pierside initiated this action on September 16, 2015, and on January 12, 2017, it filed the operative third amended complaint, ECF No. 178, alleging causes of action for: (1) enforcement of plaintiff's maritime lien; (2) breach of contract; (3) quantum meruit; (4) unjust enrichment; and (5) fraudulent conveyance. Third Am. Compl. ¶¶ 24–55. On May 4, 2017, with the court's leave, Owens filed the instant second renewed motion for summary judgment, incorporating her arguments from a previous renewed motion for summary judgment filed on March 22, 2017, ECF No. 198. Owens contends that she is entitled to summary judgment because it is indisputable that

4

she is not liable for breach of contract, for a fraudulent conveyance, or under equitable principles. ECF No. 198. On May 18, 2017, Pierside filed a response in opposition to Owens's motion, ECF No. 208, and on May 25, 2017, Owens filed a reply thereto, ECF No. 214.

On November 11, 2017, the magistrate judge issued the R&R, recommending that the court grant in part and deny in part Owens's second renewed motion for summary judgment, granting it with respect to Pierside's second cause of action for breach of contract solely to the extent its claim is based in partnership, but denying it with respect to the remaining claims. R&R 20–21. The R&R specifically advised the parties of the procedure for filing objections thereto and the consequences if they failed to do so. R&R 22. On December 1, 2017, Owens timely filed objections to the R&R, ECF No. 258. No other objections have been filed, nor has any party filed a responsive pleading to Owens's objections. The matter is now ripe for the court's review.

## II. STANDARDS OF REVIEW

The magistrate judge makes only a recommendation to the court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with the court. Id. at 270–71. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id. However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co.,

416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings." Greene v. Quest Diagnostics Clinical Labs., Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted). Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the magistrate judge's proposed findings. Id. Finally, the failure to file specific, written objections to the R&R results in a party's waiver of the right to appeal from the judgment of the district court based upon such recommendation. United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if the evidence presented could lead a reasonable fact finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. Id. The party moving for summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick Cty. Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718–19 (citing Anderson, 477 U.S. at

6

247–48). "A mere scintilla of evidence supporting the [non-moving party's] case is insufficient" to defeat a motion for summary judgment. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 256 (noting that a non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial").

### III. DISCUSSION

In her objections, Owens states that the R&R "correctly determined the absence of any partnership between her and Closson . . . and properly granted [her] motion to that extent." Objs. 2. She "objects to the Report to the extent it finds issues of fact as to implied authority, ratification, quantum meruit and unjust enrichment, and fraudulent conveyance." Objs. 2. Although she does not expound on these objections, her filing contains headings for: (1) "the breach of contract claim" under which she discusses implied authority and ratification, Objs. 2–10; (2) the "equitable claims" under which she discusses quantum meruit and unjust enrichment, Objs. 10–11; and (3) the "fraudulent conveyance" claim with a brief discussion thereof, Objs. 11. The court addresses these sections of Owens's objections in turn.

#### A. Breach of Contract Claims: Implied Authority and Ratification

Owens "objects to the [R&R] to the extent it recommends that her summary judgment motion be denied based on implied agency[,] Objs. 7, and "on the basis of ratification." Objs. 10. With respect to implied authority, Owens summarizes her objection as:

> [A]lthough an agent's authority can be established by implication, the record in this case failed to raise any genuine issue of material fact as to such authority. The evidence showed, at most, that Closson assumed responsibility for the repair and maintenance of the [Frolic] and that

7

> Owens may have a vague idea of his activities despite their estrangement. It does not remotely suggest that Owens, either expressly or by implication, authorized Closson to contract substantial debts on her personal behalf.

Objs. 7. With respect to ratification, she summarizes her objection as: "[Pierside] failed to offer any admissible evidence raising an issue of fact as to whether Owens, after being fully informed of the particulars, ratified a contract purportedly made in her name by Closson." Objs. 10. Although the court finds that these objections come close to being too general to warrant de novo review because they raise issues previously argued, the court carefully reviews these objections.

The court disagrees with Owens's contention that there is a lack of evidence on the issues of implied authority and ratification such that she is entitled to summary judgment. As the R&R correctly notes, "while Owens has presented evidence and testimony to dispute that Closson possessed any implied authority to act on her behalf," there is sufficient evidence warranting denial of summary judgment in Owens's favor, specifically evidence that Owens and Closson jointly owned the Frolic, which was paid for with marital funds and insurance proceeds from the sinking of a boat they previously owned, Owens Dep. 24:5–21, 102:6–14. Therefore, there is a question of fact as to whether Closson had implied authority from Owens to contract for storage of the Frolic with Pierside in order to protect the vessel from an impending hurricane. Accordingly, the R&R properly recommends denial of summary judgment on this issue.

With respect to ratification, the R&R correctly notes that there is evidence that Owens learned that the Frolic was being stored at Pierside in order to protect the vessel but did nothing to nullify such actions because: (1) she was copied on emails discussing the storage and repairs, ECF Nos. 208-3; 208-44; (2) she was included in a telephone call

between Closson and Brophy discussing the storage, Brophy Dep. 39:13–40:24, 49:7–25; and (3) she visited Pierside's boatyard with Closson after the Frolic was stored there, ECF No. 208-3; Brophy Dep. 24–25, 28:18–30:25. Therefore, there is a question of fact as to whether Owens ratified the contract for storage because she accepted the benefit of storing the Frolic with Pierside, with full knowledge of the facts, and made an affirmative election indicating an intention to adopt the agreement. See Rainsford v. Apex Bank, Civil Action No. 8:16-03521-MGL, 2017 WL 3307647, at *4 (D.S.C. Aug. 3, 2017) (citation omitted) (listing elements of ratification). Accordingly, the R&R properly recommends denial of summary judgment on the issues of ratification and implied authority. Therefore, the court finds that Owens is not entitled to summary judgment on the breach of contract claim, except to the extent that it is based in partnership.

### B.     Equitable Claims: Quantum Meruit and Unjust Enrichment

In support of her objection to these claims, Owens states that the R&R "seems to conclude that, assuming Owens can be said to have received a benefit as a result of Pierside's service, it more or less followed it would be inequitable for her to retain the value of the benefit without paying for it." Objs. 10 (citing R&R 20). To support her contention, she again cites Niggel Associates, Inc. v. Polo's of North Myrtle Beach, Inc., 374 S.E.2d 507 (S.C. Ct. App. 1988), and Turner v. Rams Head Co., No. C.A. 3:05-2893-CMC, 2007 WL 2579386 (D.S.C. Sept. 4, 2007), stating that both cases "stress that a defendant must have done something to induce the plaintiff to confer a benefit before it can be held liable for restitution or unjust enrichment." Objs. 10. Indeed, Owens merely rehashes these same cases and arguments already advanced in her second renewed motion for summary judgment, which the R&R has considered and ruled upon. ECF No.

198 at 18–22. Accordingly, she fails to make specific objections to the R&R. See Weber v. Aiken-Partain, No. 8:11-cv-02423, 2012 WL 489148, at *2 (D.S.C. Feb. 15, 2012) (noting that objections that merely rehash arguments previously raised and addressed by the magistrate judge are insufficient to direct the court to a specific error in the magistrate judge's proposed findings and recommendations). Therefore, because Owens fails to make objections to the R&R with the requisite level of specificity or to provide any direction as to which portions the court should examine under a de novo lens, the court need "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." See Diamond, 416 F.3d at 315 (citing Fed. R. Civ. P. 72 advisory committee's note). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

After reviewing the record in this case, the applicable law, and the R&R under a "clear error" lens, the court agrees with the recommendation of the magistrate judge and finds that Owens is not entitled to summary judgment on the unjust enrichment and quantum meruit claims.

### C. Fraudulent Conveyance

Similar to her general objection to the R&R's findings on the equitable claims, Owens "objects to the Report to the extent it recommends denial of summary judgment as to [the] fraudulent conveyance claim." Objs. 11. In support of her contention, Owens merely states "[i]t is axiomatic that, if Owens is entitled to judgment on [Pierside's] contract and equitable claims as discussed above, she was never indebted to [Pierside]

10

and could not be liable . . . on a fraudulent conveyance theory." Objs. 11. Owens makes this same argument in her second renewed motion for summary judgment, which the R&R has considered and ruled upon. ECF No. 198 at 22. Accordingly, she fails to make a specific objection to the R&R's findings on this issue, and the court need "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." See Diamond, 416 F.3d at 315 (citation omitted).

After reviewing the record in this case, the applicable law, and the R&R under a "clear error" lens, the court agrees with the recommendation of the magistrate judge and finds that Owens is not entitled to summary judgment on the fraudulent conveyance claim. In summation of the court's review of the R&R and Owens's objections thereto, the court finds that the magistrate judge properly concluded that Owens is entitled to summary judgment on the breach of contract claim solely to the extent that it is based in partnership but not entitled to summary judgment on the remaining claims.

## IV. CONCLUSION

For the reasons set forth above, the court **ADOPTS** the magistrate judge's R&R, ECF No. 254. The court **GRANTS IN PART AND DENIES IN PART** Owens's second renewed motion for summary judgment, ECF No. 205, **GRANTING** it with respect to Pierside's second cause of action for breach of contract solely to the extent its claim is based in partnership, but **DENYING** it with respect to the remaining claims.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
**UNITED STATES DISTRICT JUDGE**

**December 19, 2017**
**Charleston, South Carolina**